FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUL 0 7 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

DIANE TORRES,

                Plaintiff,

-against-

MONTELI TRAVEL, INC.
d/b/a SALSACRUISE.COM,

        and

JULIO C. ROJAS-LOPEZ,

        and

EL GALLO PRODUCTION, CORP.,

                Defendants.

------------------------------------------------------------- X

09-CV-2714 (ARR)(SMG)

NOT FOR ELECTRONIC OR
PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

On June 22, 2009, plaintiff Diane Torres ("plaintiff" or "Torres") filed a complaint in this action. On October 25, 2010, she filed an amended complaint, in which she asserts claims against defendants Julio Rojas Lopez ("Rojas"), El Gallo Productions, Corp. ("El Gallo"), and Monteli Travel, Inc., d/b/a Salsacruise.com ("Monteli"). The amended complaint alleges that, on July 29, 2008, during an incident on a commercial cruise liner off the coast of Florida, Rojas sexually assaulted and battered plaintiff and intentionally inflicted emotional distress upon her. The amended complaint also states several causes of action arising from that alleged incident against El Gallo and Monteli. Presently before the court is a motion for summary judgment brought by Rojas and El Gallo (collectively, "Rojas defendants") on the grounds that this court lacks personal jurisdiction over them. For reasons set forth below, their motion is granted.

1

# BACKGROUND[1]

## I. The Parties

Plaintiff is a resident of Pennsylvania. Amend. Compl. ¶ 2. Rojas is a salsa music performer and musical director who resides in Puerto Rico. Answer to April 7, 2010 Interrogatories ("April 7 Int."), Defendants' Statement of Uncontested Material Facts ("Def. 56.1"), Dkt. No. 27-1, Ex. 5, ¶ 1. Rojas and his wife own and operate El Gallo, a closely-held Puerto Rican corporation, which has its principal place of business in Puerto Rico. Plaintiff's Response to Defendants' Statement of Uncontested Material Facts ("Pl. 56.1"), Dkt. No. 7-1, ¶ 4. El Gallo is the booking agent/employer for Rojas and his salsa band. April 7 Int. ¶¶ 24, 25. Monteli is a New York-based corporation with is principal place of business in Brooklyn. Pl. 56.1 ¶ 1. Monteli conducts salsa-themed cruises aboard Carnival Cruise Line ships. Nov. 8, 2010 Deposition of Myrna Franceschis ("Franceschis Depo."), Pl. 56.1, Ex. B, 10. From their Brooklyn location, Monteli obtains blocks of cabins aboard Carnival Cruise Line ships, books the necessary event spaces on the ships to conduct salsa events, hires known salsa music artists to perform on the cruise, and sells their theme package to consumers. Id. at 7, 11.

## II. Rojas Defendants' Agreement with Monteli

In early 2007, Rojas' wife, on behalf of El Gallo, contacted Monteli and proposed that Rojas perform on one of its cruises. Franceschis Depo. at 12-13. Subsequently, over a period of a couple months, Rojas defendants negotiated the terms of the contract with Monteli. Id. at 14; Pl. 56.1 ¶ 6. The negotiations took place over a series of telephone conferences, during which Rojas defendants and their representatives were located in Puerto Rico and Monteli's representatives were located in New York. Pl. 56.1 ¶ 6. Rojas defendants drafted the terms of the contract in Puerto Rico. Id. Representatives of Monteli flew to Puerto Rico to complete the

---

[1] Unless otherwise noted, the following facts are not disputed.

signing of the contract. Franceschis Depo at 14. Aside from that instance, all business between Rojas defendants and Monteli was conducted by phone and email. Franceschis Depo. at 48.

On June 21, 2007, El Gallo signed an engagement contract with Monteli. Pl. 56.1, Ex. A at 1. The contract required Rojas to attend a five-day cruise that departed from Florida. Id. The cruise took place from July 28, 2008 to August 2, 2008, and Rojas agreed to perform twice during that cruise for 75 minutes each. Id. In exchange for his services, Rojas received $25,000.00 and accommodations. Id. Monteli also arranged for a photograph/autograph session with featured artists, including Rojas, to take place during the cruise. Def. 56.1 ¶ 11. Monteli did not require Rojas to be available to cruise guests at all times during the cruise. Id.

### III. The Alleged Incident Aboard Carnival Fascination

Plaintiff and her family purchased a "Salsa Cruise" theme travel package from Monteli. Pl. 56.1 ¶ 1. Rojas' performances were included as part of the entertainment in that package. Id. On July 28, 2008, the cruise ship Carnival Fascination departed from Miami, Florida with Rojas and plaintiff on board. Id.; Def. 56.1 ¶ 1. While the cruise was at sea, on the night of July 29, 2008, plaintiff, her husband, and her son were walking to one of the ship's restaurants for dinner when they noticed Rojas in a piano bar talking to the piano player. Def. 56.1 ¶ 2; May 30, 2010 Deposition of Diane Torres ("Torres Depo."), Def. 56.1, Ex. 3, 17-19. Rojas was at the bar having a drink; he was not performing or signing autographs during a photograph/autograph session set up by Monteli. Def. 56.1 ¶¶ 12-13. Plaintiff and her family approached Rojas and asked him to pose for pictures. Id. During this interaction, plaintiff alleges that Rojas "intentionally kissed, caressed, and fondled [her] and engaged in other sexual contact for his personal sexual arousal and gratification." Amend. Compl. ¶ 17. She claims that the conduct of Rojas was "unwelcome, offensive and non-consensual, and constituted an unlawful sexual

3

assault and battery." Id.

IV. Rojas Defendants' Contacts with New York

In the years immediately preceding and subsequent to the alleged incident aboard the Carnival Fascination, Rojas defendants had some business contacts with New York. Specifically, Rojas performed in New York at least eight times in 2008, the year of the incident, at least four times in 2009, and at least two times in 2010. Pl. 56.1 ¶ 4. On each occasion, his concerts were one-day performances. April 7 Int. ¶ 5. Rojas' 2008 performances occurred in February, April, May, and August through November and his 2009 performances occurred in April, July, October, and November. Id. Compensation for Rojas and his band from the shows in New York totaled $22,000.00 in 2008 and $11,000.00 in 2009. Pl. 56.1 ¶ 4. In 2008 and 2009, Rojas performed in numerous locations other than New York, including different states in the U.S. and other countries. April 7 Int. ¶ 5. He performed thirty-four times in 2008 and forty-eight times in 2009. See id.

Additionally, in the past, a Puerto Rican company, MP Records, produced and distributed Rojas' albums for sale in numerous locations, including New York. Nov. 8, 2010 Deposition of Ivelisse Escobar Moreno ("Moreno Depo."), Pl. 56.1, Ex. E,16-18; Nov. 8, 2010 Deposition of Julio Rojas Lopez ("Rojas Depo."), Defendants' Supplemental Statement of Uncontested Material Facts ("Def. Supp. 56.1"), Dkt. No. 29-1, Ex. I, 8; Pl. 56.1 ¶ 4. Rojas defendants received royalties for every record sold by MP Records. Moreno Depo. at 17-18. Rojas, however, stopped receiving royalties from MP Records in 2007, when the company went out of business. Id.; Rojas Depo. at 8-9. Rojas is not currently under contract with any record company. April 7 Int. ¶ 6. Plaintiff asserts, though, that Rojas' albums can still be purchased at record stores in New York. Pl. 56.1 ¶ 4. She claims that the albums available for purchase were

4

published in 2007 and 2008 and sold by J&N Records LLC and Sony BMG Entertainment (US Latin) LLC. Id.

Aside from albums sales in New York, from approximately 1993 until 2005, Rojas defendants had a relationship with a promoter located in New York City, named Andre Pozo, Sr. of Pozo International Production, Inc. ("Pozo Inc."). April 7 Int. ¶ 26; Pl. 56.1 ¶ 4. Pozo, Sr. booked events for Rojas all over the world. Moreno Depo. at 13; April 7 Int. ¶ 34. Pozo, Sr. retired in 2005, and Rojas defendants have not had any professional relationship with him since then. Id. ¶ 26. Following Pozo, Sr.'s retirement, Rojas defendants established a promoter relationship with his son, Andre Pozo, Jr. Moreno Depo. at 14; April 7 Int. ¶ 26. Although the precise date is unclear from the record, Pozo, Jr. moved from New York to Miami, Florida around the time that his father retired in 2005. Id.; Moreno Depo. at 15. From 2005 until 2010, Pozo, Jr. did not have an office in New York. Id. Pozo, Jr. took no part in the contract negotiations with Monteli. Rojas Depo. at 24. Rojas defendants never had a formal contractual relationship with the Pozos or Pozo Inc. April 7 Int. ¶ 26. Rojas defendants paid them fifteen to twenty percent of the earnings from the events that they arranged. Id. ¶ 34. Rojas defendants did not have an exclusive promoter relationship with the Pozos; they had other promoters in addition to them. Def. Supp. 56.1 ¶ 2.

With respect to property interests in New York, Rojas defendants do not own real or personal property in the state. Def. 56.1 ¶ 3. Rojas defendants also do not maintain any bank accounts in New York. Id.

V.   The Instant Motion

On March 7, 2011, Rojas defendants filed a motion for summary judgment in this action. Rojas defendants contend that this court lacks personal jurisdiction over them under

N.Y.C.P.L.R. §§ 301 and 302. In response, plaintiff asserts that this court has personal jurisdiction over Rojas defendants under §§ 301, 302(a)(1), and 302 (a)(3)(i).[2] For the reasons set forth below, the court holds that it lacks personal jurisdiction over Rojas defendants under §§ 301 and 302. Accordingly, Rojas defendants' motion for summary judgment is granted.

## LEGAL STANDARD

A moving party deserves summary judgment if, "upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993) (citations omitted); see Fed. R. Civ. P. 56 (c). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty, 477 U.S. 242, 249 (1986). In addressing a motion for summary judgment, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989) (citations omitted). Summary judgment should be granted "[o]nly when no reasonable trier of fact could find in favor of the non-moving party . . . ." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (citation omitted). The moving party bears the initial burden of demonstrating that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). If the movant successfully shoulders its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal quotation marks omitted).

---

[2] Plaintiff's memorandum of law is ambiguous with respect to § 301. Although plaintiff does not specifically argue that this court has personal jurisdiction over Rojas defendants pursuant to that provision, the substance of her arguments indicates that she seeks to invoke § 301 jurisdiction. The court therefore addresses whether it has personal jurisdiction pursuant to § 301.

6

## DISCUSSION

To determine whether it may exercise personal jurisdiction over Rojas defendants, this court must undertake a two-step analysis. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez, 305 F.3d 120, 124 (2d Cir. 2002). First, it must determine whether New York law would confer upon its courts the jurisdiction to reach Rojas defendants. Id. If there is a statutory basis for jurisdiction, "the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." Id. (citation omitted).

The relevant statutes in this case are N.Y.C.P.L.R. § 301, New York's general jurisdiction statute, and N.Y.C.P.L.R. § 302, New York's long-arm statute. In turn below, the court considers whether it has personal jurisdiction over Rojas defendants under those statutes.

I.  General Jurisdiction under N.Y.C.P.L.R. § 301

Plaintiff asserts that "discovery and independent investigation have revealed a long-standing pattern of regular and systematic business conducted in the State of New York such that a plaintiff could subject [Rojas defendants] to personal jurisdiction in New York on any cause of action." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem."), Dkt. No. 33, 9. In support of this argument, plaintiff claims that, in New York, Rojas defendants: (i) solicited business, (ii) were represented by a promoter, (iii) performed concerts for compensation, and (iv) sold albums and received royalties from those sales. In response, Rojas defendants contend that such activities do not rise to the level of regular business activity in New York. The court agrees with Rojas defendants.

Generally, a non-domiciliary defendant "cannot be sued in New York on causes of action wholly unrelated to acts done in New York . . . ." Saudi v. Marine Atl., Ltd., 306 Fed. Appx. 653

(2d Cir. 2009) (quotation marks omitted). But, under N.Y.C.P.L.R. § 301, a non-domiciliary defendant is subject to general personal jurisdiction in New York if it is "doing business" in the state at the time a complaint is filed against it. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)(citation omitted); Precision Assocs. v. Panalpina World Transp., No. 08-CV-42 (JG)(VVP), 2011 U.S. Dist. LEXIS 51330, at *132 (E.D.N.Y. Jan. 4, 2011). A non-domiciliary defendant "is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Id. (alteration in original; citations and internal quotation marks omitted). "In order to establish that this standard is met, a plaintiff must show that a defendant engaged in 'continuous, permanent, and substantial activity in New York.'" Id. (citations and internal quotation marks omitted). Grounds considered in determining whether a party is "present" in New York include (i) the existence of an office in New York, (ii) the solicitation of business in the state, (iii) the presence of bank accounts and other property in the state, and (iv) the presence of employees of the foreign defendant in the state.[3] Saudi, 306 Fed. Appx. at 655.

In this case, it is undisputed that Rojas defendants do not have an office, bank accounts, or other property in New York. The court therefore focuses its analysis on Rojas defendants' solicitation of business in New York and their presence within the state at the time the complaint was filed on June 22, 2009.

The court begins by noting that, in an attempt to meet the "doing business" standard, plaintiff relies upon certain activities by Rojas defendants that are plainly insufficient. First, the

---

[3] It is a matter of debate whether an individual, as opposed to a business entity, may be properly subjected to personal jurisdiction under the "doing business" standard of § 301. Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 732 n.8 (S.D.N.Y. 2001) (noting that the New York Court of Appeals has not resolved the issue and the lower state courts are divided). The court assumes, without deciding, that Rojas could be subjected to personal jurisdiction under this provision.

court finds that Rojas defendants' promoter relationship with the Pozos is an inadequate basis to establish their presence within New York. "A plaintiff may establish that the defendant was present in the jurisdiction either directly or through its agent." Doe v. Abercrombie & Kent, Inc., No. 09 Civ. 7052, 2010 U.S. Dist. LEXIS 6268, at *10 (S.D.N.Y. Jan. 19, 2010) (citations omitted). "Under well-established New York law, a court of New York may assert jurisdiction over a [non-domiciliary defendant] when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the [non-domiciliary defendant] that go beyond mere solicitation and are sufficiently important to the foreign entity that the [entity] itself would perform equivalent services if no agent were available." Wiwa, 226 F.3d at 95. While Rojas defendants were affiliated with a New York representative, Pozo Sr., from 1993 until 2005, at the time the complaint was filed in this action, Rojas defendants had no such representation. After Pozo, Sr.'s retirement in 2005, Rojas defendants established a promoter relationship with Pozo, Jr., who represented them from Florida, not New York. Thus, Rojas defendants' relationship with the Pozos is an insufficient basis to establish personal jurisdiction.

Likewise, the court finds that the sale of Rojas' albums in New York is insufficient to meet the "doing business" standard. Rojas defendants' production and distribution company, MP Records, has been out of business since 2007, and Rojas defendants have not received royalties from the sale of Rojas' albums since that time. To the extent that other record companies are still selling Rojas' albums in New York, there is no evidence in the record demonstrating that Rojas has a relationship with those companies or that he receives royalties from the sale of albums distributed by them. Indeed, to the contrary, the record indicates that Rojas defendants currently have no contractual relationship with any record company. Thus, according to the record in this case, at the time the complaint was filed in June 2009, Rojas

defendants had no involvement in the sale of Rojas' albums in New York and they were not receiving royalties from those sales. As such, the sale of Rojas' albums in New York has no bearing on this court's exercise of personal jurisdiction over Rojas defendants.

With respect to the remaining activities on which plaintiff relies, the court first addresses Rojas defendants' solicitation of business in New York. "Solicitation alone will not ordinarily show that a defendant is 'doing business' in New York, but where combined with evidence that the defendant 'engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist.'" Schultz v. Safra Nat'l Bank, 377 Fed. Appx. 101, 102-103 (2d Cir. 2010) (citation omitted); see Gallelli v. Crown Imports, LLC, 701 F.Supp.2d 263, 271 (E.D.N.Y. 2010) ( "[W]here the solicitation of business is asserted in support of a 'doing business' allegation, the [non-domiciliary defendant's] activities must rise to the level of solicitation plus 'some additional activities . . . sufficient to render the [defendant] amenable to suit.'"). "How much more activity is required beyond solicitation is a question of fact in each individual case." 2-301 Weinstein, Korn & Miller, New York Civil Practice, ¶ 301.16

Here, the record demonstrates minimal, not substantial and continuous, solicitation of business in New York by Rojas defendants during the time period leading up to the filing of plaintiff's complaint in June 2009. In 2008, Rojas defendants contacted New York-based Monteli and proposed that Rojas perform on a cruise. Rojas also performed eight times in New York in 2008 and four times in 2009. Although the record does not indicate whether Rojas solicited these performances, the court assumes that either Rojas or promoters acting on his behalf solicited these performances. Even assuming that Rojas solicited business in New York on nine occasions in 2008 and on four occasions in 2009, the court finds that to be minimal solicitation. See, e.g., Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d

1039, 1045 (2d Cir. 1990) (thirteen business visits over eighteen months insufficient to confer jurisdiction); BizJetworld Corp. v. BizJet Int'l Sales & Support, Inc., No. 09 Civ 00038 (BSJ)(GWG), 2009 U.S. Dist. LEXIS 64216, at *9 (S.D.N.Y. July 14, 2009) ("BizJet's fourteen sales visits to New York over the two-year period from 2007 through 2008 do not amount to 'substantial and continuous' solicitation."); Dunn v. Southern Charters, Inc., 506 F. Supp. 564, 567 (E.D.N.Y. 1981) (solicitation of orders for defendant's products through independent agents and publications insufficient to provide general jurisdiction). Accordingly, in order to establish that Rojas defendants were "doing business" in New York, plaintiff would have to point to other significant business activities in the state aside from Rojas defendants' mere solicitation.

The only other activities that plaintiff relies upon are Rojas' musical performances in New York. Eight of Rojas' thirty-four performances in 2008 and four of his forty-eight performances in 2009 were in New York. Those performances were infrequent, one-day events that occurred intermittently in various different months throughout the year. Even coupled with Rojas defendants' minimal solicitation in New York, the court concludes that such occasional business activities in the state do not demonstrate that Rojas defendants were "doing business" in New York. See, e.g., Ziegler, Ziegler & Assoc. LLP v. China Digital Media Corp., No. 05 CV 4960 (LAP), 2010 U.S. Dist. LEXIS 84506, at *13 (S.D.N.Y. July 13, 2010) (solicitation coupled with occasional business visits to New York do not constitute "doing business" under § 301); Brought to Life Music, Inc. v. MCA Records, Inc., No. 02 Civ. 1164 (BNA), 2003 U.S. Dist. LEXIS 1967, at *9-*10 (S.D.N.Y. Feb. 11, 2003) (holding that the following activities were insufficient to establish that defendant was "doing business" in New York: "(i) [defendant's] involvement with musical recordings produced in New York; (ii) derivation of income from the sale of musical recordings nationwide, including New York; (iii) musical performances in New

York; and (iv) co-publishing relationship with New York entity."); Jacobs, 160 F.Supp.2d at 732 (producers' contacts with New York, which included viewing theater productions, negotiation, and casting and hiring talent for productions overseas, were insufficient to establish jurisdiction under § 301).

Plaintiff has failed to establish that Rojas' defendants were engaged in continuous, permanent, and substantial activity in New York such that they were "doing business" in this state at the time plaintiff filed her complaint in June 2009. The court therefore holds that it lacks personal jurisdiction over Rojas defendants under § 301.

II. Long-Arm Jurisdiction under N.Y.C.P.L. § 302

Although the court lacks personal jurisdiction over Rojas defendants under § 301, it may still exercise jurisdiction over them if the requirements of New York's long-arm statute, § 302, are met. Plaintiff argues that the court has jurisdiction over the defendants under §§ 302(a)(1) and 302(a)(3)(i). With respect to § 302(a)(1), plaintiff asserts that (i) the contract between Rojas defendants and Monteli was a business transaction in New York and (ii) plaintiff's cause of action arose from that transaction, because "absent Rojas' direct business relationship with Monteli, the plaintiff and he would never have been aboard the Carnival Fascination together for the alleged assault to occur." Pl. Mem. at 7-8. With respect to § 302(a)(3)(i), plaintiff contends that the court has jurisdiction over defendants because Rojas defendants maintained a persistent and substantial course of business conduct in New York.

In response, Rojas defendants argue that the court lacks jurisdiction under §§ 302(a)(1) and 302(a)(3)(i). Rojas defendants contend that their contract with Monteli was not an in-state business transaction for the purposes of § 302(a)(1). Further, even if the contract was a business transaction, Rojas defendants argue that the cause of action did not arise from that transaction.

12

Rojas defendants also contend that the court lacks jurisdiction over them under § 302(a)(3)(i) because "the injuries alleged in the instant action did not occur in the State of New York, as the incident occurred at sea and thereafter plaintiff returned to her home in the State of Pennsylvania." Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem."), Dkt. No. 27, 7.

The court holds that it lacks jurisdiction over Rojas defendants under § 302. Specifically, the courts finds that it lacks jurisdiction (i) under § 302(a)(1) because the alleged sexual assault did not arise from the contract between Rojas defendants and Monteli, and (ii) under § 302(a)(3)(i) because the injury to plaintiff did not occur in New York.

*A.  Long-Arm Jurisdiction under § 302(a)(1)*

Section 302(a)(1) provides that a court may exercise jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Two requirements must be satisfied for a court to exercise personal jurisdiction over a defendant under this provision. First, the defendant must have transacted business within New York. Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). Second, the claim asserted must arise from that business activity. Id. The court assumes, without deciding, that the contract between Rojas and Monteli constitutes a "business transaction" under the first prong.[4] The court thus turns to the second prong.

The Second Circuit recently expounded upon the standard under that prong, stating:

---

[4] Because Rojas defendants negotiated the contract with Monteli by telephone and email from Puerto Rico, and because the contract was signed there, the court notes that it is far from clear that the contract constitutes a "business transaction" within New York. See Executive Life LTD. v. Silverman, 890 N.Y.S.2d 106, 108-09 (2d Dep't 2009) ("Although negotiations may have taken place by telephone, fax, and email, and the defendant allegedly faxed the agreement to Executive's office in New York, the defendant's actions did not amount to a purposeful invocation of the privileges of conducting business in New York.").

13

> New York courts have held that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted." A connection that is "merely coincidental" is insufficient to support jurisdiction. This inquiry is a fact-specific one, and when the connection between the parties' activities in New York and the claim crosses the line from "substantially related" to "mere coincidence" is not always self-evident.

Sole Resort, 450 F.3d at 103 (alteration in original; internal citations omitted). Typically, a cause of action "arises from" a business transaction when "a defendant . . . breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764-765 (2d Cir. 1983) (internal citations omitted); see also Weinstein ¶ 302.05 ("CPLR 302(a)(1) may occasionally provide the basis for a tort claim but will most often cited as the basis for a contract claim."). By contrast, with respect to non-commercial torts, courts have often found the requisite connection between the cause of action and the business transaction lacking; thus, they have held that such claims fail to satisfy the second prong of § 302(a)(1).

In Gelfand v. Tanner Motor Tours, LTD., 339 F.2d 317 (2d Cir. 1964), for instance, the Second Circuit held that a negligence claim was insufficiently related to a contract between a non-domiciliary and a New York resident to satisfy the second prong of § 302(a)(1). In that case, plaintiffs alleged that they were injured on a bus trip from Las Vegas to the Grand Canyon due to the negligence of defendants, a bus company and related entities, which were domiciled in New York. Id. at 318. Plaintiffs argued that the tort arose from defendants' sale of the bus tickets to plaintiffs through a travel service in New York. Id. at 321-22. The Second Circuit disagreed. In regard to the relationship between the tort and contract, the court stated:

14

> We cannot . . . agree that plaintiffs' cause of action in tort arose from that sale. The alleged negligence of the defendants, the subsequent injury to the plaintiffs, and every relevant occurrence connecting these two events, all took place three thousand miles from Long Island, New York . . . . We are referred to no appellate court cases, nor has our own research disclosed any, which uphold anything like such slender grounds.

Id. at 321 (citations omitted). The court therefore found that it lacked personal jurisdiction over defendants under § 302(a)(1).

Similarly, in Diskin v. Starck, 538 F.Supp. 877 (E.D.N.Y. 1982), this court held that an intentional tort was too attenuated to a contract between a New York resident and non-domiciliary to satisfy the second prong of § 302(a)(1). Defendants in that case were owners and operators of a riding camp for children in Vermont. Id. at 880. They advertised their camp in New York through a weekly publication. Id. The parents of the infant plaintiff, a New York resident, responded to an advertisement by the camp, were sent a brochure, and contracted with the camp to send plaintiff there. Id. At the camp, camp employees allegedly sexually assaulted plaintiff. Id. Plaintiff argued that the court had jurisdiction over defendants pursuant to § 302(a)(1). Id. With respect to the second prong, plaintiffs asserted that the tort arose from their contract with defendants and defendants' advertising in New York. Id. In rejecting that contention, the court stated:

> The courts in New York consistently have held that injuries sustained while participating outside the state in recreational activities advertised and contracted for within the state, bear too remote a relationship to the advertising and contractual activity claimed to be the transaction of business in the state to warrant a conclusion that the injuries arose from the in-state activity.

15

Id. at 880 (citations omitted). The court thus held that it lacked jurisdiction under § 302(a)(1).[5]

Gelfand and Diskin are instructive here. In both cases, a New York contract was a but-for cause of an out-of-state, non-commercial tort. Despite that but-for connection, each case held that the tort did not "arise from" the business transaction because of the attenuated relationship between them.[6] In this case, plaintiff argues that "absent Rojas' direct business relationship with Monteli, the plaintiff and he would never have been aboard the Carnival Fascination together for the alleged assault to occur." Pl. Mem. at 7-8. Plaintiff is correct that the contract between Rojas defendants and Monteli was a but-for cause of the alleged sexual assault. Aside from that but-for connection, though, the relationship between the contract and the alleged sexual assault is extremely attenuated. The alleged sexual assault occurred at sea, off the coast of Florida, more than one thousand miles away from both New York and Puerto Rico – the two locations from which the contract was negotiated. The sexual assault did not occur while Rojas was performing pursuant to the contract nor did it occur while Rojas was at a photograph/autograph session set up by Monteli. Rather, it allegedly occurred when plaintiff and her family approached Rojas at a piano bar while he was having a drink. During that interaction, Rojas allegedly took a number of inappropriate actions, all of which were outside the scope of his contractual relationship with Monteli. These facts demonstrate that plaintiff's cause of action is not "substantially related" to Rojas defendants' contract with Monteli; on the contrary, the connection between them was no

---

[5] Subsequent decisions have reached similar conclusions regarding the insufficiency of the connection between non-commercial torts and New York business transactions. See, e.g., Holzman v. Mount Mansfield Co., No. 88 Civ. 6074 (MBM), 1989 U.S. Dist LEXIS 6597, at *4-5 (S.D.N.Y. June 13, 1989) (holding that "the requisite relationship between the transaction of business and the cause of action cannot be established where the plaintiff is injured while participating in recreational activities outside the state, even though the activities were advertised or contracted for in New York."); Pellegrino v. Stratton Corp., 679 F. Supp. 1164, 1172-73 (N.D.N.Y. 1988) (holding the purchase of ski tickets insufficiently related to injury sustained while skiing for personal jurisdiction to be conferred because plaintiff "alleges a cause of action sounding in tort; it does not allege a cause of action for breach of contract.").

[6] See also Weinstein ¶ 302.05 (noting that, under the second prong of § 302(a)(1), it is generally insufficient to show that the events "that form the basis of the claim followed sequentially after the contract" or "would not have occurred 'but for' the contract.").

16

more than "mere coincidence." See Sole Resort, 450 F.3d at 103. The court thus concludes that plaintiff's tort claim did not "arise from" the contract, and it holds that it lacks personal jurisdiction over Rojas defendants under § 302(a)(1).

    *B.*  *Long-Arm Jurisdiction under § 302(a)(3)(i)*

The court also holds that it lacks personal jurisdiction over Rojas defendants under § 302(a)(3)(i). Section 302(a)(3)(i) confers personal jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state . . . if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." Plaintiff avers that the court has jurisdiction over Rojas defendants under § 302(a)(3)(i) based on Rojas' defendants business contacts with New York. As Rojas defendants note, however, for § 302(a)(3)(i) to confer personal jurisdiction in a tort action, New York must be the situs of the injury to plaintiff. See, e.g., Swindell v. Florida E. Coast Ry. Co., 42 F.Supp.2d 320, 325 (S.D.N.Y. 1999) ("With respect to § 302(a)(3), it has been held that the original injury must occur in New York. If the injury occurs outside New York and merely becomes manifest in New York, or has its greatest consequences in New York, the statute is not satisfied.") (citations omitted); Herman v. Sharon Hospital Inc., 522 N.Y.S.2d 581, 582-83 (2d Dep't 1987) (holding that the "situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff."). Plaintiff's alleged injury took place on a cruise off the coast of Florida. The injury did not occur in New York and, therefore, the court lacks personal jurisdiction over Rojas defendants under § 302(a)(3)(i).

## CONCLUSION

For the foregoing reasons, the court holds that there is no genuine issue of material fact as to whether it lacks personal jurisdiction over Rojas defendants under N.Y.C.P.L.R. §§ 301 or 302. Accordingly, because the court lacks jurisdiction under those provisions, Rojas defendants' motion for summary judgment is granted.[7]

SO ORDERED.

s/Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: July 5, 2011
Brooklyn, New York

---

[7] Since the court lacks personal jurisdiction over Rojas defendants under §§ 301 and 302, it does not consider whether the exercise of personal jurisdiction over them pursuant to those provisions would comport with due process. Additionally, because neither party has addressed whether this court has personal jurisdiction over Rojas with respect to Monteli's cross-claim against him for indemnification, the court declines to consider that issue.